IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

RICHARD A. WHITE,

      Petitioner,

v.                                       Case No. 2:19-cv-00121

DONALD F. AMES, Superintendent,
Mount Olive Correctional Complex,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are Respondent's Motion for Summary Judgment (ECF No. 12) and Petitioner's Motion for Default Order (ECF No. 24). For the reasons stated more fully herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Motion for Default Order (ECF No. 24), **GRANT** Respondent's Motion for Summary Judgment (ECF No. 12), and dismiss this matter from the docket of the court.

## PROCEDURAL HISTORY OF PETITIONER'S CASE

### A.    The petitioner's criminal proceedings and direct appeal.

On September 14, 2010, Petitioner was indicted by a Nicholas County grand jury on one count of first degree murder arising out of the shooting death of Harvey Hersman.

*State v. White*, No. 10-F-79.  (ECF No. 13-3).  Throughout his criminal proceedings in the Circuit Court, Petitioner was represented by attorney William C. Forbes ("Forbes").

Following a jury trial on March 29-30, 2011, Petitioner was found guilty of first degree murder without a recommendation of mercy.  (ECF No. 13-5 at 192).[1]  On or about April 29, 2011, Petitioner filed a motion for a new trial asserting that his conviction should be overturned because of juror misconduct and an alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963), due to the State's failure to disclose the fact that the victim's girlfriend allegedly moved his body before law enforcement conducted its investigation.  (ECF No. 13-6).  Evidentiary hearings on the motion for new trial were held on May 5, 2011 and May 27, 2011.  (ECF No. 13-8 and 13-9).  On July 20, 2011, the Circuit Court denied juror misconduct claim in a written order. (ECF No. 13-11).  However, the Court ordered additional briefing on the prosecutorial misconduct/*Brady* claim.  (*Id.*)

On August 3, 2011, the Circuit Court, ruling from the bench, denied the motion for a new trial with respect to the prosecutorial misconduct/*Brady* claim and then sentenced Petitioner to life in prison without the possibility of parole.  (ECF No. 13-12).  The Court followed up with a written order denying the motion for a new trial on the prosecutorial misconduct/*Brady* issue, which was entered on August 18, 2011, and a sentencing order on August 23, 2011.  (ECF No. 13-14 and 13-15).

On January 27, 2012, Petitioner filed a direct appeal to the Supreme Court of Appeals of West Virginia ("the SCAWV"), raising the following claims: (1) insufficient evidence to overcome his self-defense theory; (2) juror bias resulting in a verdict that was based upon passion and prejudice and was against the manifest weight of the evidence;

---

[1] For ease of reference, with respect to page citations to the record herein, the undersigned will refer to the page number associated with the docket entry in the court's CM/ECF system, rather than the actual page numbers within a transcript or brief submitted as an exhibit herein.

(3) instructional error; and (4) prosecutorial misconduct. (ECF No. 13-16). Following oral argument, the SCAWV denied the appeal and affirmed his conviction and sentence in a Memorandum Decision entered on June 7, 2013. *State v. White*, 744 S.E.2d 668 (W. Va. 2013). (ECF No. 13-21).

### B. Petitioner's state habeas proceedings.

On August 29, 2013, Petitioner filed a *pro se* habeas corpus petition in the Circuit Court of Nicholas County. *White v. Ballard*, No. 13-C-24. (ECF No. 13-24). Attorney Christopher S. Moorehead was subsequently appointed to represent Petitioner. On August 6, 2015, Petitioner, by counsel, filed an amended petition alleging numerous claims of ineffective assistance of counsel. He also challenged the sufficiency of evidence to support first degree murder, asserted that he was denied a fair trial by an objective jury, and reasserted his *Brady* claim grounded in the alleged movement of Hersman's body. (ECF No. 13-25).

On January 14, 2016, the Circuit Court conducted an omnibus evidentiary hearing in which Forbes testified. (ECF No. 13-26). On December 29, 2016, the Circuit Court denied Petitioner's petition. (ECF No. 13-27). The SCAWV affirmed the Circuit Court's decision on February 23, 2018. *White v. Terry*, No. 17-0071, 2018 WL 1026872 (W. Va., Feb. 23, 2018). (ECF No. 13-31). A Mandate issued on March 27, 2018. (ECF No. 13-32).

### C. Petitioner's instant habeas corpus petition and related briefing.

On February 19, 2019, Petitioner filed the instant petition under 28 U.S.C. § 2254, alleging the following grounds for relief:

1.  Trial counsel provided ineffective assistance of counsel when he failed to challenge the admissibility of Petitioner's statement to police while he was in custody.
2.  Trial counsel provided ineffective assistance of counsel when he precluded Petitioner from testifying at trial

3

3.    Trial counsel provided ineffective assistance of counsel when he waived Petitioner's proposed self-defense instruction.

4.    Trial counsel provided ineffective assistance of counsel when he failed to have Petitioner evaluated for competency, responsibility, and diminished capacity.

5.    Trial counsel provided ineffective assistance of counsel when he failed to strike a juror who admittedly favored the West Virginia State Police, who had investigated the subject incident.

6.    Trial counsel provided ineffective assistance of counsel by failing to object to evidence admitted by the State throughout the trial.

7.    Trial counsel provided ineffective assistance of counsel when he failed to present the State's plea offer of voluntary manslaughter.

8.    Petitioner was denied a trial by a fair and impartial jury.

9.    Petitioner was denied a fair trial because the State failed to inform him that the victim's girlfriend had allegedly moved his body prior to the investigation by law enforcement.

10.    Petitioner's conviction for first degree murder was not supported by sufficient evidence.

(ECF No. 2).

On March 2, 2020, Respondent filed a Motion for Summary Judgment with numerous exhibits (ECF No. 12) and a Memorandum of Law in support thereof (ECF No. 13). Respondent's motion acknowledges that all of the claims raised in Petitioner's § 2254 petition were properly exhausted in his state court proceedings, and further asserts that each claim lacks substantive merit. Therefore, he contends that he is entitled to judgment as a matter of law on each claim. (*Id.*)

After being notified of his right and obligation to respond to the motion, on April 22, 2020, Petitioner filed a Response to the Motion for Summary Judgment with additional exhibits (ECF No. 21). Petitioner's convoluted response appears to raise a new

*Brady* claim grounded in the State's alleged failure to disclose evidence surrounding a pressure cooker lid located in Hersman's kitchen, which the State asserted Petitioner used to strike Hersman before grabbing the gun from Hersman that he then used to shoot him. Petitioner's response also suggests that the State's theory surrounding this evidence was false; however, as addressed below, Petitioner's son, Robert White, testified that his father hit Hersman with the pot lid and Robert's prior statement to the police also set forth that fact.  Petitioner's response further asserts that his counsel was ineffective in failing to object or correct the alleged discrepancies in the State's presentation of this evidence, or to use the evidence himself to bolster Petitioner's self-defense theory.

None of these claims were asserted and exhausted in the state court proceedings. Consequently, they are barred from review by this federal court under 28 U.S.C. § 2254(b)(1)(A).  Moreover, because these claims were raised for the first time in Petitioner's response to the motion for summary judgment, they are not properly before this court. *See, e.g., Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); *Miles v. Owen*, No. 4:12–998–MGL, 2013 WL 227766, at *2 (D.S.C. Jan. 22, 2013) ("The Court ... declines to address Petitioner's new claims which he raises for the first time in his response and sur-reply."); *White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").  Therefore, the undersigned will not further address these claims herein.

Respondent did not file a reply.  Thereafter, Petitioner filed a document, titled as a "Motion to Compel Respondent to Conform to Ineffective Assistance of Counsel Standard," which the undersigned has construed as an unauthorized sur-reply.  The sur-

reply summarily asserts that the state courts unreasonably applied the Supreme Court's standard governing ineffective assistance of counsel claims set forth in *Strickland v. Washington*, 466 U.S. 688 (1984), and further discusses case law concerning the application of the § 2254(d) standards of review.  However, the sur-reply provides no specific argument concerning how *Strickland* was unreasonably applied to the facts of Petitioner's case.

Petitioner's sur-reply further suggests that his habeas counsel, Christopher S. Moorehead, failed to present sufficient evidence to support his habeas claims and that Moorehead did not properly argue a claim of cumulative error.  Thus, he claims that Moorehead, himself, provided ineffective assistance in the state habeas proceedings. However, the alleged ineffectiveness of state habeas counsel is not a valid basis for federal habeas corpus relief.  *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review.")*; Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.")  Thus, Petitioner's sur-reply is wholly without merit.

Moreover, to the extent that Petitioner's sur-reply seeks an evidentiary hearing in this federal court, his request is barred by established Supreme Court precedent.  In *Cullen v. Pinholster*, 563 US. 170 (2011), the Supreme Court held that review under § 2254 of a claim that was adjudicated on the merits in state court proceedings is limited to the

record that was before the state court that adjudicated the claim and, thus, the development of additional evidence in a new evidentiary hearing in the federal court is permitted.

## SUMMARY OF RELEVANT TRIAL EVIDENCE

On December 2, 2009, Petitioner shot and killed Harvey Hersman ("Hersman") in his own home.  In the early morning hours of December 3, 2009, Petitioner gave a video-taped statement to the police in which he claimed he shot Hersman in self-defense.

According to Petitioner, he and his son Robert White ("Robert") went to the residence of his former wife, Kathy White ("Kathy") to retrieve some personal property. Not finding Kathy at home, Petitioner and Robert walked next door to Hersman's residence.  Petitioner told the police that he believed that Hersman and Kathy were engaged in a long-term love affair, which Kathy denied, and Petitioner claimed that Kathy came out of Hersman's bedroom "half-naked" that night.  (ECF No. 13-5 at 98-99; ECF No. 30-1 at 9).  There was clearly a history of threats and violence involving the two men. (ECF No. 13-4 at 262; ECF No. 13-5 at 89-92, 101; ECF No. 30-1 at 6-10).  Additionally, it is undisputed that Hersman had ingested methamphetamine prior to the incidents in question.  (ECF No. 13-5 at 84-86; ECF No. 21-2 at 14).

When Hersman answered the door, Petitioner entered the house while Robert stayed outside on the porch.  (ECF No. 13-4 at 232-33).  In his statement to the police, Petitioner stated that "when I walked in Harvey Hershman's [sic] house, I did have a knife[,] I did have a weapon[.]" However, Petitioner later stated that he gave the knife to his son because of his volatile history with Hersman, and "I didn't want to look like a threat."  According to Petitioner, he gave the knife to Robert with the blade closed.  (ECF No. 30-1 at 17-18; 34-36).

Kathy, who was in Hersman's house at the time, testified that, as she entered the living room from the den, she saw Petitioner on top of Hersman on the living room couch and heard Hersman yelling to get Petitioner off of him. She then fled the home, running by Robert, who was standing on the front porch, and went to call 9-1-1. Kathy testified that she did not see who started the altercation. (ECF No. 13-5 at 89, 99-100).

Robert also gave a statement to the police and testified at trial. He stated that Petitioner was not angry or upset when they arrived at Hersman's house. However, an altercation between Petitioner and Hersman ensued. (ECF No. 13-4 at 232-34, 262-63).

Robert testified that, when he subsequently entered the house, he saw Petitioner holding Hersman down on the couch and he urged Petitioner to leave. However, when they got off the couch, Hersman punched Petitioner and the two men resumed fighting. Robert further testified that he tried to stand between the two men and again urged his father to leave. Contrary to Petitioner's statement to the police, Robert stated that Petitioner asked him to pick up his knife, which was laying open on the living room floor. Robert testified that he put the knife in the pocket of his hoodie.[2] (ECF No. 13-4 at 236-37).

According to Robert, Hersman ran into the kitchen and Petitioner ran after him. Hersman retrieved a .45 caliber pistol, which was in its holster. Petitioner then hit Hersman in the head with the lid of a pressure cooker, tackled him, and grabbed the gun from his hand. (ECF No. 13-4 at 238-42, 246, 252; ECF No. 30-1 at 14, 40). Robert testified that he tried to grab the gun from his father and again tried to convince him to leave. (*Id.* at 243). Meanwhile, Hersman somehow grabbed another gun, a .357 revolver,

---

[2] The police later found an open locked-blade knife under Hersman's body; however, it is unclear whether it was the same knife that Petitioner admitted carrying inside Hersman's home. There is no evidence that Hersman suffered any stab wounds.

and fired the gun once, and possibly twice. (*Id.* at 246-47). Robert then ran out of the trailer. He testified that he heard more gunshots after he exited. (*Id.* at 247-48). He later contended that Petitioner would not have been able to leave Hersman's home alive without shooting him. (*Id.* at 258-59, 265).

According to Petitioner's statement to the police, after Hersman fired the .357 revolver, Petitioner tackled Hersman, knocked the .357 revolver out of his hand onto the floor, then Petitioner removed the .45 pistol from its holster and fired it at Hersman, who he claims was still going for the other gun. (ECF No. 30-1 at 6, 26-28). Petitioner admitted that, upon realizing there were no bullets in the chamber, he "shucked the shell in [the gun]," shot Hersman "right in the head," and then "just emptied it." (*Id.* at 16, 26-27). Petitioner acknowledged shooting Hersman three times in the head from close range. (*Id.* at 27-28). Petitioner specifically told police that

> after . . . he had the gun and I knocked that gun out of his hand [when] he had the other gun and I took that gun from him and whenever I aimed it at him and [it] clicked, he just kind of looked at me and laughed and he looked over at that other gun. When he looked over at the other gun, I shucked the shell in it and it had a shell in it and I shot it . . . . Because, like I said when I took that gun away from him, [he] [came] back with another one and when he had the other one, that's whenever I took it away from him. Well, when I took it away from him, I stepped back. I seen him unarmed and I can't say that I wasn't in . . . mind of shooting him anyway. Petitioner admitted to the police that he "shot him three times in the head."

(*Id.* at 26-27). After the shooting, Petitioner returned to his own home, wrapped the .45 pistol in a plastic bag, and buried it underneath a split rail fence on his property line. (*Id.* at 22-23, 25).

Petitioner's issues with Hersman were evident during his police interview. He told the police that, when he entered the victim's house, "I did have a knife[,] I did have a weapon and ... I said Harvey, you know we got a problem and he said you [are] damn right

we do . . . ." (*Id.* at 2).  Petitioner further admitted that, "as far as everything I know about Harvey Hershman [sic], that ain't nothing you want in your neighborhood anyway[;]" "[s]ome things that he's done to me that I mean I just don't like the guy at all . . . . And I know some things on the guy that just, he's dirty[;]" "somebody as that man, he ain't safe to be on the street.  He's corrupting somebody, he's a bad influence on somebody." (*Id.*, *passim*).  As indicated above, Petitioner admitted that when he took the .45 pistol away from Hersman, he saw him "unarmed and I can't say that I wasn't in . . . mind of shooting him anyway . . . ." (*Id.* at 27).

## ANALYSIS

### I.    *PETITIONER'S MOTION FOR DEFAULT ORDER*

On August 12, 2020, Petitioner filed a Motion for Default Order (ECF No. 24) requesting that the court enter a default judgment in his favor under Rule 55 of the Federal Rules of Civil Procedure and release him from custody solely on the basis that Respondent did not file a reply brief concerning his own motion for summary judgment. This is an improper basis for a default judgment.

Moreover, judgments grounded in default are strongly disfavored and generally inappropriate in federal habeas actions, given the special gravity of a decision to grant federal habeas relief to a convicted state prisoner. *See, e.g., Lind v. Ballard*, No. 2:14-cv-26284, 2016 WL 11483825, at *5 (S.D. W. Va. Apr. 27, 2016), *report and recommendation adopted*, No. 2:14-CV-26284, 2016 WL 5346950 (S.D. W. Va. Sept. 23, 2016); *Santillana v. Collins*, No. 5:14-cv-12474, 2015 WL 852328, at *3 (S.D. W. Va. Jan. 14, 2015) (collecting cases supporting proposition), *report and recommendation adopted*, 2015 WL 852335 (S.D. W. Va. Feb. 26, 2015); *Mooney v. United States*, No. 3:08-cv-03652, 2009 WL 2929335, *4 (D.S.C. Sept. 8, 2009) ("[C]ourts do not enter default judgments

in favor of habeas petitioners without reaching the merits of the claim as a matter of policy due to the risk of releasing prisoners who have been duly convicted and the costs involved with retrial.").

Additionally, Respondent had no obligation whatsoever to file a reply brief. The undersigned's order used permissive language permitting Respondent to file a reply, if he so chose. (ECF No. 14 at 3). Accordingly, Respondent is not in default. For all of these reasons, the undersigned proposes that the presiding District Judge **DENY** Petitioner's Motion for Default Order (ECF No. 24).

## II.   *RESPONDENT'S MOTION FOR SUMMARY JUDGMENT*

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), sets forth the standard of review of federal habeas corpus petitions filed by state prisoners. It provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially

indistinguishable facts. The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Respondent has filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure asserting that Petitioner cannot satisfy the AEDPA standards with respect to any of the claims in his § 2254 petition. Rule 56 applies to habeas corpus proceedings. *See*, *e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 81 (1977); *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991). Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.). Summary judgment is required where the non-moving party fails to make a sufficient showing of an essential element of a claim. *Id.* The undersigned will apply these standards in consideration of Respondent's summary judgment motion on the merits of the claims in Petitioner's § 2254 petition.

### A.    Petitioner's ineffective assistance of counsel claims.

Petitioner's federal habeas petition contains seven claims alleging ineffective assistance of counsel by Mr. Forbes during his trial court proceedings.  In *Strickland v. Washington*, 466 U.S. 688 (1984), the Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel.  A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 687-91.  Moreover, "judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  Furthermore, the AEDPA "adds a layer of respect for a state court's application of the legal standard."  *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997).

In reviewing trial counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and the burden is on the petitioner to show prejudice.  *Strickland*, 466 U.S. at 689; *see also Hutchins v. Garrison*, 724 F.2d 1425 (4th Cir. 1983).  Further, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.* at 690.  Additionally, a petitioner may not merely speculate about potential prejudice but must "affirmatively prove" that the result of the proceedings would have been different but for the deficient performance of trial counsel.  *Id.* at 693.

> 1.   *Not challenging Petitioner's statement to law enforcement and the search warrant that led to the location of Hersman's gun.*

Petitioner first asserts that Forbes provided ineffective assistance of counsel because he failed to challenge the admissibility of Petitioner's statements made to law

enforcement on December 3, 2009. Petitioner contends that he gave his statement after ingesting "nerve medication," which made him "drowsy and extremely fatigued," and despite the fact that he repeatedly fell asleep while at the Nicholas County Sheriff's Department. (ECF No. 2 at 7). Nonetheless, at an admissibility hearing on January 21, 2011, Forbes stated on the record that there was "no constitutional impediment to the introduction of the statement." (*Id*. and Ex. A). Forbes further indicated that he believed the statement was "equally useful" to the defense. (*Id*.) The trial court found that the statement was admissible, stating:

> The Court would find that the officer informed the Defendant of all of his rights, the fact that he was not under arrest and free to leave, and that he was being questioned in regard to a crime; and that there was no coercion or force used in any way, no promises or threats used, and that there is no indication that Defendant was under the influence of drugs or alcohol to the extent that he could not give a statement.

(*Id*.)

Petitioner further contends that Forbes was ineffective because he did not challenge a search warrant that was obtained which led to the discovery of the gun Petitioner used to shoot Hersman, which he buried on his own property. In support of this claim, Petitioner maintains that he was not "the aggressor" in the altercation with Hersman, but provides no other basis for challenging the validity of the search warrant. (*Id*.) Petitioner contends that it was unreasonable for Forbes not to contest the admissibility of his statement and the validity of the search warrant and that his conduct "places the outcome of the underlying trial in doubt." (*Id*.) Therefore, he contends that both prongs of the *Strickland* standard are met. (*Id*.)

Respondent, on the other hand, asserts that Forbes' conduct was not ineffective. Respondent notes that the state courts found that Petitioner had properly received

*Miranda* warnings before giving his statement and that he never indicated that he did not understand his rights or that he was somehow impaired at that time. Respondent further asserts that the interviewing officer testified that Petitioner coherently answered his questions. Additionally, after giving his statement to police, Petitioner indicated that he had buried the firearm used to kill Hersman on his property, and he executed a consent to search his property. Nonetheless, the investigating officers obtained a search warrant for the property and located the gun and a pill crusher in a bag buried along his fence line, as well as a jacket containing bloodstains that Petitioner had allegedly worn at the time of the shooting incident inside his trailer.

During the omnibus evidentiary hearing, Forbes testified that he did not file a motion to suppress Petitioner's statement or the seized evidence because he did not believe it would be successful. Forbes further testified that he believed that Petitioner would not make a good witness at trial and that his prior statement would be better evidence to support his self-defense theory. Therefore, Respondent contends that Forbes' actions were reasonable strategic decisions not subject to second-guessing under *Strickland*, and that the state habeas courts so recognized. (ECF No. 13 at 17-18).

The Circuit Court found that Forbes' decision not to object to the admissibility of Petitioner's statement was a strategic decision that was "within the wide range of reasonable professional assistance" and, thus, Petitioner failed to meet his burden of proving by a preponderance of the evidence that his counsel was ineffective. (ECF No. 13-27 at 12). The SCAWV affirmed that decision. (ECF No. 13-31).

Based upon a review of all of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly

15

established federal law; nor were those decisions based upon an unreasonable determination of the facts presented in the state court proceedings. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground One of Petitioner's § 2254 petition.

2.    *Not permitting Petitioner to testify*

In Ground Two of his § 2254 petition, Petitioner contends that Forbes provided ineffective assistance of counsel because he did not permit Petitioner to testify at trial over Petitioner's objection. Petitioner claims that he told Forbes he wanted to testify to tell his version of the events on the night in question. However, after calling Petitioner's ex-wife, Kathy, as the sole defense witness, Forbes rested the defense's case. Petitioner claims that he subsequently asked when he would be testifying and Forbes told him it was too late. Petitioner contends that Forbes' conduct was unreasonable and "places the outcome of the underlying trial in doubt." Therefore, he contends that he has satisfied both prongs of *Strickland*. (ECF No. 2 at 9-10).

Conversely, Respondent contends that "the record is devoid of any indication that Counsel Forbes willingly precluded Petitioner from testifying." (ECF No. 13 at 19-20). Based upon Forbes' testimony at the omnibus hearing stating that, "for strategic reasons," he 'didn't think [Petitioner] should testify,'" Respondent contends that Forbes' conduct was reasonable trial strategy and, thus, not ineffective. (ECF No. 13 at 19). Therefore, Respondent contends that the state court decisions were correct and that he is entitled to judgment as a matter of law. (*Id.* at 18-20).

At the omnibus hearing, Forbes testified that he and Petitioner discussed his right to testify multiple times before and during trial. Forbes stated that he did not unilaterally

16

decide that Petitioner would not testify on his own behalf, but that there were good, strategic reasons for him to not testify.  (ECF No. 13 at 19 and ECF No. 13-26 at 23-26 and ECF No. 13-27 at 13).  The Circuit Court found that Petitioner was fully informed of his right to testify and that, to the extent that Forbes advised him not to testify, that advice was a reasonable strategic decision.  (ECF No. 13-27 at 13).  The SCAWV affirmed that decision.  (ECF No. 13-31).

Based upon a review of all of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that Forbes' conduct fell below an objective standard of reasonableness with respect to the decision of whether Petitioner should testify at his trial.  Thus, the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law; nor were those decisions based upon an unreasonable determination of the facts presented in the state court proceedings. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Two of Petitioner's § 2254 petition.

### 3. *Issues concerning jury instructions*

In Ground Three of his § 2254 petition, Petitioner contends that Forbes provided ineffective assistance because he failed to press the Circuit Court to offer his version of an instruction on self-defense.  On March 30, 2011, prior to instructing the jury, Forbes twice told the Court that the defense had no objection to the jury charge, which included the following instruction on self-defense:

> Now, one of the questions to be determined by you in this case is whether or not the Defendant acted in self-defense so as to justify his acts. Under the laws of this State, if the defendant was not the aggressor and had reasonable

grounds to believe, and actually did believe, that he or another person was in imminent danger of death or serious bodily harm from which he could save himself or such other person only by using deadly force against his assailant, he had the right to employ deadly force in order to defend himself or such other person. By deadly force is meant force that is likely to cause death or serious bodily harm. Now, the circumstances under which the defendant acted must been such as to produce in the mind of a reasonably prudent person similarly situated, the reasonable belief that the other person was then about to kill him or another, or to do him or another serious bodily harm. In addition, this Defendant must have actually believed that he or another person was in imminent danger of death or serious bodily harm and that deadly force must be used to repel it. For the purpose of determining the Defendant's state of mind at the time the deadly force was used, in determining whether the Defendant acted in self-defense, you may consider evidence showing that the decedent, Harvey Hersman, had previously threatened the life of the defendant. In order for this defendant to have been justified in the use of deadly force in self-defense, he must not have provoked the assault on himself or have been the aggressor. Mere words, without more, do not constitute provocation or aggression.

When there is a quarrel between two or more persons and both are at fault, and a combat as a result of such quarrel takes place and death ensues as a result, in order to reduce the offense to killing in self-defense, two things must appear from the evidence and circumstances in the case: First, before the mortal shot was fired, the person firing the shot declined further combat; and (2), that he necessarily killed the deceased in order to preserve his own life, or that of another, in order to protect himself or another from great bodily harm if evidence of self-defense is present. The State must prove, beyond a reasonable doubt, that the defendant did not act in self-defense. If you find that the State has failed to prove, beyond a reasonable doubt, that this defendant did not act in self-defense, you must find this defendant not guilty. In other words, if you have a reasonable doubt as to whether or not this defendant acted in self-defense, your verdict must be not guilty. Whether a homicide could otherwise be characterized as murder in the first degree, murder in the second degree, voluntary manslaughter or involuntary manslaughter, if you should find that the defendant's conduct was carried out in self-defense, then the homicide is justified and the defendant is not guilty of any of the crimes charged.

(ECF No. 13-5 at 130-132).

Petitioner contends that this instruction erroneously advised the jury that Petitioner had a duty to retreat when no such duty existed under the facts presented. His petition further states:

18

> The testimony at trial of Petitioner's son, Robert White, corroborated and supported the notion that the Petitioner did not have the ability to retreat. Robert White testified that the car was approximately a football field away and that his father would have had to risk getting shot in the back if he had decided to retreat to the car. [Citation omitted].

(ECF No. 2 at 12). Petitioner further contends that his proffered instruction, which stated that one who is attacked "without fault" and is "not the aggressor" has no duty to retreat before using deadly force, was "more in line with the underlying facts, circumstances and the law." (*Id.*) His proposed instruction stated as follows:

> Under the laws of this state, when one without fault himself is attacked by another in such a manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life or that of another person some great bodily harm, and there is reasonable grounds for believing the danger imminent, that such design will be accomplished and the person assaulted has reasonable grounds to believe, and does believe, such danger is imminent, **he may act upon such appearances and without retreating, use deadly force against his assailant**, if he has reasonable grounds to believe, that use of such force is necessary in order to avoid the apparent danger, and the killing under such circumstances is excusable, although it may afterwards turn out that the appearances were false, and that there was in fact neither design to do him some serious harm nor danger that it would be done. But all of this the jury must judge from all the evidence and circumstances of the case.

> A petitioner who is not the aggressor and has reasonable grounds to believe, and actually does believe, that he is in imminent danger of death or serious bodily injury from which he could save himself only by using deadly force against his assailant has the right to employ deadly force against his assailant. *State v. Dinger*, 624 S.E.2d 572 (W. Va. 2005), citing to Syl. Pt. 7, *State v. Cain*, 20 W. Va. 679 (1882), Syl. Pt. 6, *Feliciano v. 7-Eleven, Inc.*, 210 W. Va. 740, 559 S.E.2d 713 (2001).

(*Id.* at 12-13).

Thus, Petitioner contends that it was unreasonable for his counsel to waive objection and accept an erroneous jury instruction, which further resulted in a finding of waiver and no plain error on appeal. (*Id.*) He further contends that, had the jury been properly instructed, there is a reasonable likelihood that the outcome of his trial would

have been different.  (*Id.*)  Therefore, he contends that he has satisfied both prongs of *Strickland* to establish ineffective assistance of counsel.  (*Id.*)

Respondent contends that the instruction given, which **did not** contain a specific duty to retreat, was consistent with state law and appropriate under the facts of the case. Respondent further asserts that the state courts properly found that Forbes' decision not to press the court to give his version of the instruction was a reasonable trial strategy and that the State presented sufficient evidence to demonstrate that Petitioner did not act in self-defense.  Thus, Respondent contends that it is unlikely that the court would have given his proposed instruction, or that the outcome of the proceedings would have been different had his instruction been given.  (ECF No. 13 at 21-22).

The Circuit Court's final order denying habeas relief indicates that, during the charge conferences, the parties agreed that there was no duty to retreat and the court elected to give the instruction as given, which does not include a duty to retreat, over the State's objection.  (ECF No. 13-27 at 15-16).  The Court further found as follows:

> Having reviewed the transcripts and the charge, the Court does not find that Petitioner has met his burden of proving, by a preponderance of the evidence, that his counsel was ineffective for failing to object to the self-defense jury instruction, as included in the charge. Whether or not counsel should have insisted on the inclusion of [] "no duty to retreat" language is a matter of "strategy, tactics and arguable courses of action.

(*Id.* at 16).  Therefore, the Court held that Petitioner had not demonstrated that Forbes' conduct fell below an objective standard of reasonableness.  (*Id.*)  The SCAWV affirmed this decision on appeal.  (ECF No. 13-31).

Based upon a review of all of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly

established federal law; nor were those decisions based upon an unreasonable determination of the facts presented in the state court proceedings. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on Ground Three of Petitioner's § 2254 petition.

### 4. *Failure to request competency evaluation*

In Ground Four of his § 2254 petition, Petitioner asserts that Forbes provided ineffective assistance of counsel because he failed to investigate and have Petitioner's competency evaluated. Specifically, Petitioner contends that, despite the fact that he had previously suffered a severe head injury and was on medication, Forbes failed to have him evaluated by a psychiatrist or psychologist to determine his competency to stand trial, his criminal responsibility, and whether he had a diminished capacity at the time of the crime. (ECF No. 2 at 14-15). Petitioner further asserts that, although Forbes repeatedly mentioned Petitioner's head injury in his opening statement and closing argument (for example, asserting that he was not "the brightest bulb in the deck," "doesn't think as straight as he might think," and is "often confused,"), Forbes failed to have him evaluated prior to trial. He further contends:

> There is absolutely no question but that Petitioner had a significant enough injury that the implications of that injury should have been considered by an expert witness who could have come in to the jury trial and rendered testimony before the jury. In addition to not properly having the Petitioner evaluated, to have continued to make reference to it when the Petitioner was never going to set forth any evidence supporting the injury and implications of the injury in the context of the altercation with Mr. Hersman is ineffective assistance of counsel because it denigrates and reduces the credibility of the Petitioner in the eyes of the jury.

(*Id.* at 15). Petitioner further maintains that the failure to develop evidence concerning his competency and mental state affected the jury's determination of whether to grant

mercy in a unified trial. (*Id.*) Thus, he speculates that the jury's verdict would have been different had such evidence been developed. (*Id.*)

Respondent asserts that, contrary to Petitioner's assertions, Forbes did raise the competency issue before trial and moved the trial court to enter an order granting him access to Petitioner's psychiatric records. (ECF No. 13 at 22). However, as Forbes testified at the omnibus hearing, "Petitioner was able to assist him in preparing his defense, and further noted that Petitioner had previously been found competent in another proceeding." (*Id.* at 22-23). Thus, Respondent contends that there was not enough evidence of any mental impairment to justify going forward with an evaluation and there was no evidence that Petitioner was actually incompetent, or that a diminished capacity defense would have succeeded. (*Id.* at 23). Therefore, Respondent asserts that the state courts appropriately denied Petitioner's claim of ineffective assistance of counsel on this basis.

It is well established that "a criminal defendant must be competent to stand trial." *Medina v. California*, 505 U.S. 437, 439 (1992); *see also Burket v. Angelone*, 208 F.3d 172, 191 (4th Cir. 2000); *Bell v. Evatt*, 72 F.3d 421, 431 (4th Cir. 1995). At the time of trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *United States v. Taylor*, 437 F.2d 371, 375 (4th Cir. 1971) (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). However, "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Id.* at 192. Moreover, the need for a competency hearing arises only after the trial court is presented with evidence sufficient to prompt good faith doubt regarding

competency.  *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966); *Drope v. Missouri*, 420 U.S. 162, 172 (1975); *State v. Sanders*, 549 S.E.2d 40, 50 (2001).

> In the instant matter, the Circuit Court made the following findings:
>
> Mr. Forbes considered Petitioner's disability, recognized that Petitioner was able to assist him in preparing his defense and further noted that Petitioner had previously been found competent in another proceeding.  Therefore, Mr. Forbes made the strategic decision that it was not necessary to have Petitioner evaluated by a mental health expert.

(ECF No. 13-27 at 18).  Although Forbes testified at the omnibus hearing that "in hindsight," he probably should have had Petitioner evaluated, the Court found "that does not render his strategic decision at the time of trial to be erroneous." (*Id.*)  Moreover, there is no evidence that Petitioner was actually incompetent, so he cannot demonstrate any prejudice from Forbes' actions.  Consequently, he cannot establish either prong of the *Strickland* standard necessary to succeed on a claim of ineffective assistance of counsel.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly-established federal law; nor were those decisions an unreasonable determination of the facts based upon the evidence presented in the state court proceedings.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Four of Petitioner's § 2254 petition.

> 5.    *Failure to strike juror who allegedly favored law enforcement.*

In Ground Five of his § 2254 petition, Petitioner asserts that Forbes provided ineffective assistance of counsel because he failed to strike a juror, Gregory Harper, who admitted in voir dire that he was related to a retired state trooper and that he knew a lot

of West Virginia State Troopers, including R.D. Lilly and Brad Reed, who investigated Petitioner's case. Petitioner further contends that the decision to leave a juror who favored law enforcement on the jury did not comport with the defense's trial strategy of attacking the quality of the West Virginia State Police's investigation of the crime.

However, contrary to Petitioner's contentions, when asked whether his connections to law enforcement would cause him to give any greater or lesser weight to the testimony of law enforcement officers than that of other witnesses or whether he would feel any pressure to believe or disbelieve the law enforcement officers, the prospective juror in question, Juror Harper, responded "No." Thus, there is no evidence to demonstrate that Harper could not be a fair and impartial juror; nor is there evidence that the jury verdict was affected by any alleged bias of Harper.

Respondent correctly notes that, although Harper acknowledged his connections to police officers, he never said that he "favored" the State Police and, thus, there is no evidence of any actual bias on Harper's part. Respondent further asserts that the state habeas court noted that Forbes "thoroughly examined the jurors, weighed their ability to serve impartially, and moved to have jurors struck that he felt could not be impartial." (ECF No. 13 at 25 and ECF No. 13-27 at 19). Therefore, Respondent further contends that "Petitioner has failed to prove either that Counsel Forbes' conduct was objectively unreasonable by not striking Juror Harper, or that he (Petitioner) suffered any prejudice as a result of Juror Harper remaining on the jury." (ECF No. 13 at 25).

Based upon a review of all of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly-established federal law; nor were those decisions an unreasonable

24

determination of the facts based upon the evidence presented in the state court proceedings.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Five of Petitioner's § 2254 petition.

### 6.     *Failure to object to admission of evidence throughout trial.*

In Ground Six of his § 2254 petition, Petitioner generally contends that Forbes was ineffective because he failed to object to the admission of the State's evidence throughout the trial.  The petition further asserts that "objections were rarely made, if ever, and no effort was made by defense counsel to force the State of West Virginia to properly admit evidence. (ECF No. 2 at 19).  However, the only evidence Petitioner specifically challenges in this ground of the petition is the *Miranda* form he executed before giving his statement to the police and the use of the statement itself at trial.  Petitioner contends that the prejudice of his statement outweighed any benefit the statement had for the defense, yet no objections were ever made to it.  (*Id.*)

Respondent contends that this claim is "blatantly without merit."  (ECF No. 13 at 25).  His memorandum further states:

> First, in its Final Order of December 29, 2016, the habeas court correctly found that "[c]ontrary to Petitioner's assertion, Mr. Forbes did make objections during the trial." Ex. 26, p. 21 (emphasis in original).  On making this finding, the court listed the numerous objections lodged by Counsel Forbes. See generally Id., p. 21-22 n. 9.

(*Id.*)  Respondent also cites to Forbes' testimony during the omnibus hearing in which he stated that making objections is a judgment call and that he did "not object to stuff unless there is a reason for it most of the time" because objecting too much can turn a jury against a defendant.  (*Id.* at 26 and ECF No. 13-26 at 41-42).  Concerning the specific evidence of the *Miranda* form and Petitioner's statement, Forbes testified that he did not object to

that evidence because he did not believe he had a valid legal basis to do so. (*Id.*) Thus, Respondent contends that the state courts correctly found that Forbes made reasonable strategic decisions when it came to lodging objections at trial. (*Id.* at 26 and ECF No. 13-27 at 22).

> The Circuit Court found as follows on this claim:
>
> Based on his own testimony and a review of the trial transcript, Mr. Forbes' decision on whether or not to object to the State's evidence was clearly a trial strategy. Contrary to Petitioner's assertion, Mr. Forbes did make objections during the trial. [Footnote omitted]. At other times, the record reveals why Mr. Forbes did not object to the introduction of evidence. For instance, on the second day of trial, when discussing the photographs for Dr. Mahoud, Mr. Forbes indicated that he did not object to some of the photographs of injuries such as bullet holes because "they're necessary and informative." Trial Transcript, Vol. III, p. 12. However, he did object to photographs of other injuries such as scrapes and bruises as those could be easily described and could inflame the jury. Trial Transcript, Vol. III, pp. 12-17. Similarly, although Mr. Forbes did not object to the admission of photographs of the crime scene and other items of evidence introduced during Trooper Thomas's testimony, on cross-examination, Mr. Forbes used those photographs and other items as evidence of the intensity of the fight between the Petitioner and Mr. Hersman. Trial Transcript, Vol. IL Based on all of the foregoing, the Court finds that Mr. Forbes' decision on when to object to the State's evidence was trial strategy and based on what was known and reasonable to Mr. Forbes at the time he made his decisions. Additionally, as discussed in detail above, Mr. Forbes did not object to the admissibility of the *Miranda* form or Petitioner's statement because he did not believe he had any legal basis for an objection. Therefore, petitioner has failed to prove that Mr. Forbes' actions were deficient under an objective standard of reasonableness, and Petitioner is not entitled to habeas corpus relief on the basis of counsel's trial objections or lack thereof.

(ECF No. 13-27 at 21-22). Again, this finding was affirmed by the SCAWV. (ECF No. 13-31).

Based upon a review of all of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law; nor were those decisions based upon an unreasonable

determination of the facts presented in the state court proceedings. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Six of Petitioner's § 2254 petition.

7.    *Failure to adequately convey voluntary manslaughter plea offer.*

In Ground Seven of Petitioner's § 2254 petition, Petitioner contends that Forbes failed to adequately convey and discuss a plea offer from the State that would have enabled him to plead guilty to voluntary manslaughter and face a determinate sentence of 3-15 years in prison rather than a life sentence. Thus, he contends that Forbes' failure "could have made a substantial difference in the outcome of this case." (ECF No. 2 at 21). Petitioner further claims that there is no evidence of the plea offer on the record, and that "a plea offer that was declined should have been placed on the record in the event that the Petitioner would challenge this issue, as we have in the case herein." (*Id.* at 21-22). Therefore, he asserts that he has met both prongs of *Strickland*, showing both the unreasonableness of Forbes' conduct and undue prejudice therefrom. (*Id.*)

Respondent contends that this claim is also meritless because Forbes did convey the voluntary manslaughter plea offer to Petitioner, who wholly rejected it. (ECF No. 13 at 27-28). Respondent's position is supported by Forbes' testimony at the omnibus hearing. (ECF No. 13, Ex. 25 at 43-44). Forbes testified that he advised Petitioner of the voluntary manslaughter plea offer when they met at the Central Regional Jail, and that he encouraged Petitioner to accept the plea offer, but Petitioner was adamant that he did nothing wrong and was not going to plead to anything. (*Id.*) Thus, Respondent further asserts:

> In short, apart from his own self-serving and unsupported claims, Petitioner has not produced any evidence suggesting, "let alone" proving, that Counsel Forbes failed to adequately discuss the State's plea offer of voluntary manslaughter with Petitioner.

(ECF No. 13 at 28).

The Circuit Court agreed that there was no evidence to support a finding that Forbes was ineffective in addressing the plea offer with Petitioner. The Court found as follows:

> Petitioner is unable to prove that Mr. Forbes failed to communicate the plea offer to him. Mr. Forbes' testimony contradicts Petitioner's assertion that the offer was never communicated, and Petitioner produces no evidence to support his allegation that he never knew about the plea offer to voluntary manslaughter.

(ECF No. 13-27 at 23). This finding was affirmed by the SCAWV. (ECF No. 13-31).

Based upon a review of all of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law; nor were those decisions based upon an unreasonable determination of the facts presented in the state court proceedings. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Seven of Petitioner's § 2254 petition.

### C.    Ground Eight - juror misconduct.

In Ground Eight of his § 2254 petition, Petitioner asserts that he was denied a fair trial because he was not tried by a fair, impartial, and objective jury. (ECF No. 2 at 23). Specifically, Petitioner contends that at least one juror, Denis Paschke ("Paschke"), possessed a bias and prejudicial disbelief against a theory of self-defense and that she,

and potentially some other jurors, had predetermined that Petitioner was guilty from the outset of the trial and failed to disclose that belief during voir dire. Paschke allegedly told Petitioner's cousin, Shannon Adkins-George ("Adkins-George"), of these facts and feelings during the trial, but asked her and her family not to say anything, due to the Court's instruction not to arrive at any conclusions before the close of all of the evidence.

According to Adkins-George, Paschke allegedly told her that "her father had informed her that self-defense only withstood if you didn't come to a person's house pertaining trouble" and that she followed her dad's instructions instead of the court's. (ECF No. 13-8 at 11). Adkins-George further stated that Paschke stated that she and other jurors had made up their minds on the first day of trial that Petitioner was a "cold-blooded murderer" and that he was guilty. (*Id.* at 11, 13). However, Adkins-George's testimony was highly inconsistent as to the time and place where these conversations allegedly occurred. (ECF Nos. 13-8 and 13-9). Petitioner contends that Paschke's statements indicated that the jury had already discussed the case amongst themselves and that she may have contaminated the deliberative process by sharing her preconceived judgment of Petitioner with other jurors. (ECF No. 2 at 23-24).

Respondent contends that the evidence of record does not support a finding that the jury was unconstitutionally biased or tainted. Rather, as established at post-trial hearings on Petitioner's motion for a new trial, Juror Paschke's statements, to the extent that were made at all, were not made during the trial. The testimony of Shannon Adkins-George and her husband, Robert, concerning when Paschke's alleged comments occurred, was demonstrably unreliable and incredible, and other evidence presented in the post-trial motions hearings demonstrated that the timeframe suggested by those witnesses for when the comments were allegedly made was after the trial. (ECF Nos. 13-8 and 13-9).

29

Additionally, Paschke denied having made up her mind or discussed the case with other jurors prior to the close of the evidence and further denied making the statement that if someone shot and killed someone, then it was murder. She further denied speaking with any of Petitioner's family members, or anyone else, about the trial while it was on-going. (ECF No. 13 at 29 and ECF No. 13-8 at 26-29).

The state courts addressed and denied this claim on several occasions. First, the Circuit Court made the following ruling on the record at the conclusion of the hearings on Petitioner's motion for a new trial:

> THE COURT: After reviewing the evidence, . . . the Court would find, would deny the motion for a new trial due to jury misconduct as juror Paschke's testimony was that she had no contact with anyone during the course of the trial. She did not discuss this case with anyone while the trial was going on and she did not violate any rules of the Court that were given to her. The Court would find that the allegations concerning juror misconduct have not shown Ms. Paschke to have participated in any of that conduct during the course of the trial. There may have been some contact, but it was certainly after the trial had concluded. So the Court would deny the motion for a new trial.

(ECF No. 13-9 at 17-18). The Circuit Court's subsequent written order denying the motion for a new trial found as follows:

1.   That juror Denis Paschke did not discuss the trial with Shannon George during the time the trial was on-going.

2.   That juror Denis Paschke did not violate any juror rules.

3.   That the juror violations alleged by the defendant in his Motion for New Trial were not shown to have occurred. The Court concludes as a matter of law that no juror violations occurred and the defendant's Motion for New Trial, based upon jury misconduct, is hereby ORDERED denied.

(ECF No. 13-11 at 1). Petitioner then raised this claim again in his direct appeal and the SCAWV denied it, finding as follows:

This Court has thoroughly reviewed the testimony presented with regard to the petitioner's allegations of juror misconduct. The petitioner presented the testimony of his cousin, [S]hannon A[d]kins-George, who testified that, on the evening of the first day of trial, Juror Paschke came to her home on an unrelated matter and, among other things, revealed to her that she was sitting on the petitioner's jury; that she and the other jurors had already determined that he "was nothing but a cold-blooded murderer;" and that she believed that "once you pull the trigger, you're a murderer." In contrast to Ms. A[d]kins-George's testimony, Juror Paschke unequivocally denied being at Ms. A[d]kins-George's home at any time during the course of the trial and further denied making the above-described statements to her. Significantly, the State presented the testimony of several neutral witnesses who provided objective testimony that was directly contrary to certain testimony given by Ms. A[d]kins-George; that seriously called into question her credibility; and that tended to disprove her claims that Juror Paschke acted improperly while serving on the petitioner's jury panel. In short, as the trial court determined in its order denying the petitioner's motion for a new trial, "the juror violations alleged by the defendant in his Motion for a New Trial were not shown to have occurred." The trial court's finding of fact in this regard is not clearly erroneous and, further, the circuit court did not abuse its discretion in denying the petitioner's motion for a new trial based upon juror misconduct.

*State v. White*, 744 S.E.2d 668, 684-85 (2013) (ECF No. 13-21 at 35) (footnotes omitted).

A criminal defendant is guaranteed the right to a trial by an impartial jury under the Sixth and Fourteenth Amendments. *See* U.S. CONST. amend. VI; *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968); *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) ("Due Process requires that the accused receive a trial by an impartial jury free from outside influence."); *Turner v. Louisiana*, 379 U.S. 466, 471–73 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." (internal quotation marks omitted)). An impartial jury is one that arrives at its verdict "based upon the evidence developed at trial" and without external influences. *Irvin*, 366 U.S. at 722; *see also Remmer v. United*

*States*, 347 U.S. 227, 229 (1954). "No right touches more the heart of fairness in a trial." *Stockton v. Virginia*, 852 F.2d 740, 743 (4th Cir. 1988).

Thus, it is clearly established under Supreme Court precedent that an external influence affecting a jury's deliberations violates a criminal defendant's right to an impartial jury. "The essential function of voir dire is to allow for the impaneling of a fair and impartial jury through questions which permit the intelligent exercise of challenges by counsel . . . ." *United States v. Brown*, 799 F.2d 134, 135–36 (4th Cir. 1986). But absent contrary indications, jurors are presumed to be impartial. P*oynter v. Ratcliff*, 874 F.2d 219, 221 (4th Cir. 1989). The defendant bears the burden of showing a strong possibility of juror bias. *Wells v. Murray*, 831 F.2d 468, 472 (4th Cir. 1987).

The evidence adduced at the post-trial hearings fails to demonstrate any actual bias or juror misconduct that produced undue influence on the deliberative process during Petitioner's trial. The state courts found that the evidence presented by Petitioner at the post-trial hearings was not credible and Paschke denied engaging in any such conversations during the trial.

Based upon a review of all of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law; nor were those decisions based upon an unreasonable determination of the facts presented in the state court proceedings. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and Respondent is entitled to judgment as a matter of law on Ground Eight of Petitioner's § 2254 petition.

D.    **Ground Nine – Denial of fair trial –** *Brady violation.*

In Ground Nine of his § 2254 petition, Petitioner contends that he was denied the right to a fair trial because the State failed to disclose evidence that the victim's girlfriend stated that she moved his body when she found him dead in his home.  Petitioner claims that this evidence "could have been exculpatory and used for impeachment" and that the State was aware of the evidence prior to or during the trial.  Thus, he claims that the state courts' failure to overturn his conviction on this basis violated the clearly-established precedent set forth in *Brady v. Maryland*, 373 U.S. 83 (1963).  (ECF No. 2 at 26).  His petition further states:

> The State of West Virginia did meet with a State witness, Judy Stewart, who was one of the first witnesses to approach the body of Harvey Hersman. While discussing her testimony with her prior to her testifying, Ms. Stewart did disclose to them that she had moved the body of Harvey Hersman . . . . Rather than disclose the evidence to the defendant at trial, the State of West Virginia dismissed Judy Stewart as a potential witness and never called her to testify.

(*Id.*)  Petitioner maintains that this evidence was material and exculpatory because it demonstrated that the crime scene had been contaminated, and that Stewart compromised the location of the body in relation to the gun, the knife, and the bullet trajectory.  (*Id.* at 26-27).  He claims that the failure to disclose this evidence could have materially affected his ability to present a successful self-defense theory.  (*Id.* at 27).  He further claims that he was denied the ability to call Stewart as a witness to further explore this evidence.  (*Id.*)

Respondent contends that this claim was "squarely addressed" when the trial court denied his motion for a new trial during his sentencing hearing on August 3, 2011, holding as follows:

33

THE COURT:  So the Court, then, would make the following rulings:

> The first cited grounds for a motion for a new trial was a failure to disclose
> that Ms. Stewart moved the body. The Court, based upon the evidence
> before it and the affidavit of Judy Lynn Stewart, . . . would find that she
> stated that she had found Harvey [Hersman] lying on the fan with blood on
> his head; and she reached down and touched him trying to make him
> respond, that she did not move the body in any way. So, if that be the case,
> then the failure to disclose that Ms. Stewart moved the body would be
> immaterial and would - - Well, she just didn't move the body.  And based
> upon that, the evidence would not be exculpatory[.]

(ECF No. 13 at 31 and ECF No. 13-12 at 5).  The Court reiterated its findings in a written

order, stating:

> [T]he Court finds that Judy Stewart did not move the victim's body and
> never informed the Prosecution that she did. Judy Stewart's only statement
> regarding the victim's body was that she touched the body; and that fact was
> fully disclosed in Ms. Stewart's Statement, which was provided to defense
> counsel on November 19, 2010. Accordingly, the State possessed no
> exculpatory evidence to be disclosed and there was no misconduct on the
> part of the Prosecution in this case. Judy Stewart did not move the victim's
> body and did not tell the Prosecutor that she did move the victim's body.
> Judy Stewart only touched the victim, trying to make him respond, and that
> fact was disclosed to the Defendant well before trial. Therefore, this case
> involved no constitutional due process violation under *Brady v.  State of
> Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963)[.]

(*Id.* at 31-32 and ECF No. 13-14 at 5, 9).  The SCAWV upheld this determination in

Petitioner's direct appeal, finding as follows:

> The petitioner further argues that the prosecutor failed to disclose
> exculpatory evidence that the victim's girlfriend "moved" the body when she
> arrived at his home after the petitioner left, thereby contaminating the
> crime scene. Prior to trial, the victim's girlfriend executed an affidavit in
> which she stated that, upon finding the body, she touched it to see if the
> victim would respond but that she did not move it in any way. The trial court
> properly concluded that this evidence was not exculpatory and that there
> was no misconduct by the prosecutor.

*State v. White*, 744 S.E.2d at 683 n. 18.  (ECF No. 13-21 at 18).

The evidence presented in the state courts demonstrated that Stewart did not

actually move the victim's body when she found it.  Thus, there is no credible evidence to

34

support Petitioner's self-serving contention that the State failed to disclose material exculpatory or impeachment evidence and, therefore, no *Brady* violation occurred.

Based upon a review of all of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law; nor were those decisions based upon an unreasonable determination of the facts presented in the state court proceedings. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and that Respondent is entitled to judgment as a matter of law on Ground Nine of Petitioner's § 2254 petition.

### E.    Ground Ten – Sufficiency of evidence of murder.

In Ground Ten of his § 2254 petition, Petitioner asserts that there was insufficient evidence to support the jury's verdict of first degree murder because the State failed to present evidence beyond a reasonable doubt to overcome his assertion that he acted in self-defense. (ECF No. 2 at 28). Petitioner contends that the evidence demonstrates that he approached Hersman's home without a gun (although armed with a knife) and did not introduce any firearms during the altercation. Petitioner further asserts that Hersman was reaching for a second gun when he shot him. Therefore, he contends that Hersman, not he, was the aggressor throughout the incident. (*Id.*) He further contends that his self-defense theory was amply supported by the evidence and the State failed to present sufficient evidence to overcome the same. (*Id.*)

Respondent asserts that the SCAWV's opinion denying Petitioner's direct appeal adequately addressed and denied this claim. The Court's opinion states as follows:

35

At the outset, we note that there is no dispute that the evidence in this case raised a jury question as to whether the petitioner acted in self-defense. The evidence presented at trial demonstrated that the petitioner had a particular and strong dislike for Mr. Hersman because, among other things, he believed that he was carrying on a long-term love affair with his former wife and, further, had shot at the petitioner in the past. Nevertheless, the petitioner went to Mr. Hersman's home looking for Ms. White. The petitioner admitted to police that when he entered the home, he had a knife and told Mr. Hersman, "you know we got a problem . . . ." The police found an opened knife underneath the victim's body. Further, both Ms. White and the petitioner's son saw the petitioner—who was substantially larger in size than the victim—holding the victim down on the couch. Mr. Hersman called out to Ms. White for help. Even though the petitioner's son tried to persuade his father to leave the home after the men got up from the couch, the petitioner, instead, ran after the victim into the kitchen. After grabbing the first gun out of the victim's hand, the petitioner again ignored his son's plea to leave the home. Eventually, the petitioner knocked the second gun from the victim's hand, fired the first gun, and, upon realizing there were no bullets in the chamber, "shucked the shell in [it]" and shot the victim three times in the head. It is undisputed that the petitioner never sought medical assistance for the victim or contacted law enforcement. Instead, he left the victim there alone, returned to his own home, and buried the murder weapon . . . . Viewing the evidence in the light most favorable to the prosecution, and crediting all inferences and credibility assessments that the jury might have drawn in favor of the prosecution, this Court concludes that the evidence was more than sufficient for the jury to find that the prosecution proved beyond a reasonable doubt that the petitioner did not act in self-defense.

*State v. White, supra*, 744 S.E.2d at 681 (emphasis added). (ECF No. 13 at 32-33 and ECF

No. 13-21 at 13). The SCAWV further found that there was sufficient evidence to establish

the essential elements of first degree murder. (*Id.*) Specifically, the Court found:

In this case, there was sufficient evidence from which the jury could have found the existence of [the] elements of first degree murder. With regard to malice, the petitioner's feeling of toward the victim was established from his statement to the police. As set forth above, the petitioner admitted telling the victim, "you know we got a problem" and also told police that "[s]ome things he's done to me that I mean I just don't like the guy at he's dirty[.]" Indeed, the evidence proved that the petitioner strongly disliked the victim and had a volatile history with him involving the petitioner's former wife. As for premeditation and deliberation, the evidence showed that the petitioner went to the victim's house with a knife in hand and the police found an opened knife lying underneath Mr. Hersman's body. Further, the petitioner's son testified that he attempted to get his father to leave Mr.

36

> Hersman's house three times. Instead of leaving, the petitioner followed the victim into his kitchen. Critically, the petitioner proceeded to disarm the victim and then loaded the empty gun and fired a shot into the victim's head. The victim did not die from the first shot. The petitioner then moved closer to the victim and shot him two more times in the head at close range. Thereafter, rather than calling for help, the petitioner left the victim's house and buried the murder weapon. When this evidence is viewed in the light most favorable to the prosecution, it was clearly sufficient to prove first degree murder beyond a reasonable doubt.

*Id.* at 682.  (ECF No. 13 at 33-34 and ECF No. 13-21 at 14).

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Supreme Court held that the relevant inquiry on an evidence sufficiency claim is "whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt."  This standard permits the factfinder to reasonably and fairly resolve conflicts of, and weigh, evidence, and to draw reasonable inferences from basic to ultimate facts.  *Id.*  Here, the evidence presented to the jury was sufficient to establish the essential elements of first degree murder and to demonstrate beyond a reasonable doubt that Petitioner did not act in self-defense.  Therefore, a rational trier of fact could conclude that Petitioner was guilty beyond a reasonable doubt under the *Jackson* standard.

Based upon a review of all of the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law; nor were those decisions based upon an unreasonable determination of the facts presented in the state court proceedings.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and that Respondent is entitled to judgment as a matter of law on Ground Ten of Petitioner's § 2254 petition.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Motion for Default Order (ECF No. 24), **GRANT** Respondent's Motion for Summary Judgment (ECF No. 12), and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on the opposing party and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Petitioner, and to transmit it to counsel of record.

February 9, 2021

Dwane L. Tinsley
United States Magistrate Judge